```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                    :
LINDA WEINTRAUB
                                    :
     v.                             :   Civil Action No. DKC 2008-2669
                                    :
MENTAL HEALTH AUTHORITY OF
ST. MARY'S, INC.                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this retaliation action is a motion filed by Plaintiff Linda Weintraub for an order directing Defendant Mental Health Authority of St. Mary's County, Inc. ("MHASM"), to show cause why it should not be sanctioned for noncompliance with a prior order of this court. (Paper 51). Also pending is MHASM's motion to compel discovery. (Paper 54). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's show cause motion, construed as a motion for sanctions, will be granted, and MHASM's motion to compel discovery will be denied.

**I.   Background**

Plaintiff Linda Weintraub was employed by MHASM from September 20, 2004, until her termination on October 14, 2005. After she was terminated, Plaintiff filed a charge of

discrimination with the Equal Employment Opportunity Commission and received a right to sue letter. Thereafter, she filed an action in this court against MHASM and the Board of County Commissioners for St. Mary's County ("BOCC"), asserting a single count of retaliation under Title VII, 42 U.S.C. § 2000e-3(a). The complaint alleges retaliation stemming from Plaintiff's refusal to terminate an employee under her supervision, as had been directed by MHASM Executive Director Alexis Zoss ("Ms. Zoss"). After summary judgment was granted in favor of BOCC, discovery commenced with regard to Plaintiff's claim against MHASM.

**II. Plaintiff's Motion for Sanctions**

On or about June 8, 2009, Plaintiff served MHASM with a notice of deposition, pursuant to Fed.R.Civ.P. 30(b)(6), requesting that it designate one or more corporate representatives to testify as to matters specified in the notice. In response, MHASM filed a motion for protective order, arguing that it was "essentially a defunct corporation," that it had "no employees or authorized representatives," and that "[w]hile a former corporate director could be found or brought to deposition, he or she would have no information about the topics upon which Plaintiff wishes to examine the corporation." (Paper 41 at 1, 3). Consequently, MHASM asserted, "any deposition taken by Plaintiff would result in a litany of 'I

don't know' from Defendant's appointed representative," which would "accomplish nothing." (*Id.* at 3). MHASM further claimed that "[t]he person with the most relevant personal knowledge as to the events which are the subject of Plaintiff's complaint" was Ms. Zoss, and because she was no longer an employee, she could not be made to testify as a corporate representative. (*Id.*).

On July 28, 2009, the court issued an order denying, *inter alia*, MHASM's motion for protective order and directing it to designate a corporate representative for deposition within twenty days. (Paper 46). The accompanying memorandum opinion discussed at length the requirements of Rule 30(b)(6); cautioned MHASM that "it may be sanctioned if it fails to designate and prepare a corporate representative"; and "reminded" the corporate defendant "that it will not meet its obligation . . . by figuratively 'throwing up its hands in a gesture of helplessness' and designating a representative who is inadequately prepared to testify.'" (*Id.* at 8 (quoting *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D.Md. 2000)).

By a letter to Plaintiff's counsel dated August 17, 2009, defense counsel advised that Ms. Zoss had consented to serve as MHASM's corporate representative for the Rule 30(b)(6) deposition, but added the following caveat: "Please note that

even though I have designated her as the corporate representative, having been left essentially no alternative by the court, I have no real control over her and cannot compel her to come to Maryland." (Paper 47, Ex. 3). Additional litigation ensued regarding the location of Ms. Zoss' deposition and the capacities in which she would be testifying. Ultimately, it was resolved that she would be deposed, as the Rule 30(b)(6) corporate designee, on September 14, 2009, in Virginia Beach, Virginia, and that any testimony sought in her personal and/or professional capacities would be adduced by Plaintiff's counsel during the same out-of-state trip, if not during the same deposition. Ms. Zoss' deposition was taken at the scheduled time and place.

On December 2, 2009, Plaintiff filed the instant motion for an order requiring MHASM to show cause why sanctions should not be imposed for violation of the court's prior order, pursuant to Fed.R.Civ.P. 37(b)(2). (Papers 51, 52).[1] Plaintiff claims that Ms. Zoss was unprepared to testify regarding numerous categories of information specified by the notice of deposition, that MHASM's failure to prepare its corporate designee was in direct violation of this court's prior order, and that sanctions are therefore warranted. Specifically, Plaintiff seeks

---

[1] The motion (Paper 51) and supporting memorandum and exhibits (Paper 52) were docketed separately.

4

reimbursement of costs associated with the Zoss deposition; an award of attorney's fees; an adverse inference charge to the jury, should the case proceed to trial; and/or the striking of MHASM's affirmative defenses.

In opposing, MHASM initially argues that the court may not consider Plaintiff's motion because it was filed without first conferring with defense counsel in an attempt to resolve the issue, and by failing to attach a certificate attesting to such conciliation efforts, as required by Local Rule 104.7.  (Paper 59, at 3).   Nevertheless, MHASM contends, the imposition of sanctions is inappropriate because Plaintiff has not established that MHASM acted in bad faith, nor has she made a showing of prejudice inuring to her as a result of its alleged noncompliance.  (*Id*. at 5-9).  According to MHASM, Plaintiff's motion is nothing more than "gamesmanship," which should be "disfavored by the court."  (*Id*. at 5 (internal marks and citation omitted))."[2]

As a preliminary matter, the court finds that Local Rule 104.7 has no application under these circumstances.  That rule requires counsel to "confer with one another concerning a

---

[2] Because MHASM has filed a thorough response in opposition to Plaintiff's motion, no legitimate purpose would be served by requiring it to show cause why sanctions should not be imposed. Accordingly, Plaintiff's show cause motion is construed as a motion for sanctions.

5

discovery dispute and make sincere attempts to resolve the differences between them" prior to filing a motion. Here, the court has addressed "discovery disputes" arising from the Rule 30(b)(6) deposition on two prior occasions, *i.e.*, in considering MAHSM's two previous motions for protective orders. The issue now, *i.e.*, compliance with an order of this court, is quite different. As noted, the memorandum in support of that order specifically warned MHASM of possible sanctions for noncompliance, and the record is replete with prior efforts to resolve disputes related to this deposition. Plaintiff was not required to do more prior to filing her motion for sanctions. To the extent that conciliation efforts may have been required, the court suspends that requirement for purposes of this motion. *See* Local Rule 604; *see also Pandora Jewelry, LLC v. Chamilia, LLC*, Civ. No. CCB-06-3041, 2008 WL 4533902, *6 (D.Md. Sept. 30, 2008).

Turning to the merits, MHASM does not seriously dispute that Ms. Zoss was inadequately prepared for the deposition. Indeed, it would be difficult for it, in good faith, to argue otherwise. As reflected by Plaintiff's motion, on no less than ten occasions over the course of the deposition, counsel inquired as to matters enumerated in its deposition notice and Ms. Zoss was unable to provide any meaningful response. More importantly, she repeatedly testified that no efforts were made

to obtain such information, despite the fact that MHASM was on notice that it would be sought. As the court previously explained, "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." (Paper 45 at 6 (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)). The court specifically cautioned MHASM that its obligations would not be met by "designating a representative who is inadequately prepared to testify." (*Id*. at 8). Nevertheless, MHASM presented a deponent who was clearly ill-prepared. This was in direct violation of the court's order.

MHASM devotes the bulk of its opposition to arguing that sanctions cannot be assessed because Plaintiff has failed to demonstrate that it acted in bad faith or that she was prejudiced by its noncompliance. As the Fourth Circuit explained in *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*):

> We have developed a four-part test for a district court to use when determining what sanctions to impose under Federal Rule of Civil Procedure 37. Specifically, "[t]he court must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-

>compliance, and (4) whether less drastic sanctions would have been effective." [*Anderson v. Foundation for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)].

In arguing that it "acted in good faith" in preparing for the deposition, MHASM contends that "Ms. Zoss reviewed the notice of deposition and records pertinent to this matter, in addition to consulting with counsel, as well as a previous employee."  (Paper 59 at 5).  While it may be the case that Ms. Zoss reviewed some records in preparing for the deposition, her testimony makes clear that MHASM made little or no effort to provide her with much of the information she needed in order to respond meaningfully to the items listed in the deposition notice.  In its first motion for protective order, MHASM predicted that due to the essentially defunct status of its business, "any deposition taken by Plaintiff would result in a litany of 'I don't know' from Defendant's appointed representative."  (Paper 41 at 3).  In denying that motion, the court cautioned MHASM that "throwing up its hands in a gesture of helplessness" would not suffice (Paper 45 at 8 (quoting *Textron, Inc.*, 192 F.R.D. at 504)); yet, that appears to be exactly what happened.  Indeed, in its August 17, 2009, letter designating Ms. Zoss for the Rule 30(b)(6) deposition, MHASM lamented that it had "no real control over her and cannot compel her to come to Maryland."  (Paper 47, Ex. 3).  If that was the

case, Ms. Zoss was a poor choice to serve as the Rule 30(b)(6) designee.  Regardless, these circumstances clearly support a finding that MHASM acted in bad faith.  *See Belk*, 269 F.3d at 348 ("bad faith [was] evident" where party failed to answer an interrogatory seeking a list of trial witnesses after it was specifically ordered to do so by the court).

In arguing that Plaintiff cannot demonstrate prejudice, MHASM asserts that the information that was lacking from Ms. Zoss was subsequently provided, principally through the December 7, 2009, deposition of Barry Schimpf, President of MHASM's Board of Directors.  (Paper 59 at 4).  Plaintiff does not contest this point, but observes, "it seems odd that [Ms.] Zoss did not speak with [Mr.] Schimpf in preparation for her deposition."  (Paper 62 at 3).  Odder still is that MHASM chose not to designate Mr. Schimpf as its corporate representative in the first place, though it appears that it could have.  The record reflects, in fact, that after Plaintiff filed her motion and took Mr. Schimpf's deposition, counsel for MHASM requested Plaintiff's consent to add Mr. Schimpf, after-the-fact, as an additional corporate representative.  (Paper 59, Ex. 4).  MHASM's attempt in this regard underscores that Plaintiff essentially was required to conduct two depositions and initiate further litigation in order to obtain the information it sought from MHASM's Rule 30(b)(6) designee.  Clearly, this was prejudicial.

To the extent that the third and fourth factors apply – *i.e.*, the need for deterrence and the availability of less drastic sanctions – it is well-settled that noncompliance such as that at issue here should be deterred, *see Belk*, 269 F.3d at 348; however, the court's sanctions will not be particularly severe. As Plaintiff is now in possession of most, if not all, of the information she sought through the Rule 30(b)(6) deposition, the only real prejudice she has suffered has been monetary. Indeed, Plaintiff likely would have been required to travel to Virginia Beach to depose Ms. Zoss regardless of whether she was designated as MHASM's corporate representative. Moreover, Plaintiff has provided no explanation as to why she waited approximately two and one-half months after Ms. Zoss' deposition to file the instant motion, particularly when MHASM's noncompliance was evident immediately. Considering also that MHASM had dismissed its workforce and was in the process of winding down its business at the time the deposition was taken, a measure of lenity is called for. While the court by no means excuses MHASM's noncompliance, these circumstances likely presented significant challenges to preparing the corporate designee for deposition.

Accordingly, the court will grant Plaintiff's motion, and sanctions will be assessed against MHASM in the amount of five

hundred dollars, to offset, in part, costs incurred by Plaintiff in deposing Mr. Schimpf.

**II.  MHASM's Motion to Compel Discovery**

During Plaintiff's October 26, 2009, deposition, when defense counsel inquired as to whether she had reviewed any documents in preparation, Plaintiff's counsel objected, instructing her not to answer.  While the deposition transcript is silent as to the basis for this objection, it appears that Plaintiff's counsel asserted, off-the-record, that such documents were privileged.  Plaintiff subsequently acknowledged, however, that she had reviewed a deposition she gave in "the Hall matter."  (Paper 55 at 3).[3]  On or about November 3, 2009, MHASM reviewed the documents from the Hall litigation that were in Plaintiff's possession and was invited to make copies of those materials.  (Paper 60, ¶ 3).

By a letter dated November 23, MHASM requested production of the documents reviewed by Plaintiff in preparation for her deposition, attaching a draft motion to compel discovery. (Paper 57, Ex. 1).  When Plaintiff failed to respond promptly, MHASM filed its motion on December 3, 2009, seeking an order

---

[3] Plaintiff alleges that MHASM retaliated against her because she refused to fire Katy Hall, an employee under her supervision, as directed by Ms. Zoss.  Ms. Hall was subsequently terminated by Ms. Zoss and filed a discrimination complaint.

11

compelling production of these documents. (Paper 54 at 2).[4] On December 10, Plaintiff's counsel sent MHASM a letter, *via* email, identifying a number of documents Plaintiff had reviewed in preparing for her deposition, including the complaint, her answers to interrogatories, her deposition in the Hall litigation, requests for admissions, and her initial EEOC complaint. (Paper 60, Ex. A). Counsel asserted that these documents were already in MHASM's possession, but offered to provide copies of any that were not. (*Id.*). Plaintiff's counsel also identified a "timeline" that had been reviewed by Plaintiff:

> Ms. Weintraub further reviewed a timeline created by me and my legal assistant. This timeline referenced the sources listed above as well as Ms. Zoss's deposition. It contains my thoughts and mental impressions. The timeline itself is unquestionably protected by attorney client privilege and the attorney work product doctrine. . . . As such, I am under no obligation to disclose this document to you for your review, but I have listed it on our supplemental privilege log, which is attached.

(*Id.*). In the attached privilege log, Plaintiff objected to production of what it described as a "[w]ork product document

---

[4] MHASM filed its motion on December 3, 2009 (Paper 54), but neglected to attach an exhibit referenced therein, which it supplemented on December 9 (Paper 55). On December 10, MHASM filed the certificate required by Local Rule 104.7 and supporting documents. (Papers 56, 57).

12

illustrating a timeline of major events at issue in the case created by Weintraub's Attorney, Adam A. Carter and Legal Assistant Shane Larsen," stating that the document was created in early to mid-October, identifying its subject matter as "[t]he above captioned matter," and asserting that it was protected by the attorney-client privilege and attorney work product doctrine. (Paper 60, Ex. B). Plaintiff further requested that MHASM withdraw its motion to compel discovery.

By a letter dated December 15, 2009, MHASM declined to withdraw its motion, challenging Plaintiff's assertion that the timeline was privileged:

> I disagree with you that the time line created by you and your legal assistant is not discoverable. As stated in your letter to me, the time line referenced the Complaint, Ms. Weintraub's Answers to Interrogatories, Ms. Weintraub's initial deposition taken during the Hall litigation, Requests for Admissions, and Ms. Weintraub's initial complaint to the EEOC, as well as Ms. Zoss' deposition. As such, the document is primarily factual in nature, directly related to this litigation, and otherwise discoverable. Additionally, these documents were put to a testimonial use in litigation (Ms. Weintraub's deposition), and a waiver of the work-product doctrine has taken place. As such, the documents themselves – not their broad subject matter – are discoverable.

(Paper 63, Ex. 1). MHASM further suggested that any disagreement regarding production of the timeline should be resolved by an *in camera* review of this court.

Although MHASM initially sought all documents relied upon by Plaintiff in preparing for her deposition, it has since limited the scope of its motion to production of only the timeline. (Paper 65). The Fourth Circuit has set forth a three-step analysis for determining the availability of work product immunity:

> First, we must determine whether the work product was made "in anticipation of litigation." If not, then the inquiry ends because the material is not protected. If the material was prepared in anticipation of litigation, then we must determine whether the material is "opinion work product" or "non-opinion work product." Opinion work product prepared in anticipation of litigation is absolutely immune from discovery. Finally, if the material is nonopinion work product, then it may be discovered upon a showing of "substantial need." See National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 983-84 (4th Cir. 1992).

Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992).[5]

---

[5] The court vacated its decision in Sandberg upon the unopposed request of one of the parties. See Sandberg v. Va. Bankshares, Inc., 1993 WL 524680 (4th Cir. Apr. 7, 1993). Nevertheless, a vacated opinion has precedential effect if it has been "validated" by the court of appeals. See Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll., 848 F.2d 457, 459 (4th Cir. 1988). Sandberg has been cited with approval by the Fourth Circuit on multiple occasions. See, e.g., Horne v. Owens-Corning Fiberglas Corp., 4 F.3d 276, 280 (4th Cir. 1993); see also Tatum v. R.J. Reynolds Tobacco Co., 247 F.R.D. 488 (M.D.N.C. 2008).

Here, it is undisputed that the timeline in question was created in anticipation of litigation. A document is created "in anticipation of litigation" when it is "prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *National Union Fire Ins. Co.*, 967 F.2d at 984 (emphasis in original). As Plaintiff's counsel explains, "[t]he events cited in the timeline drew upon depositions and exhibits from prior litigation concerning Katy Hall . . . as well as documents produced in the present case." (Paper 60 at 1). There is no question that this document, which was generated, in part, from discovery in this case and reviewed by Plaintiff in preparing for her deposition, was prepared "in anticipation of litigation."

The only real issues in dispute are whether the document consists of "opinion work product" or "non-opinion work product," and whether its use in preparing Plaintiff for her deposition constituted a waiver of protection. In *Nutramax Laboratories, Inc. v. Twin Laboratories, Inc.*, 183 F.R.D. 458, 462-63 (D.Md. 1998), Judge Grimm synthesized the relevant considerations with regard to the first question:

> The Fourth Circuit has explained that this formulation of the doctrine divides work product into two categories, "fact work

15

product," which may be discovered upon a showing of substantial need and inability, without undue hardship, to obtain the substantial equivalent of the materials by other means, and "opinion work product" which it has characterized variously as "absolutely immune" or "nearly absolutely immune" from discovery. *See In re Allen*, 106 F.3d 582, 607 (4th Cir.1997) (opinion work product enjoys "nearly absolute" immunity); *In Re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir.1994) (opinion work product even "more scrupulously protected" than fact work product); *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir.1992) (opinion work product "absolutely immune" from discovery); *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir.1988); *In re John Doe*, 662 F.2d 1073, 1080 (4th Cir.1981), *cert. denied* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) (opinion work product enjoys "nearly absolute" immunity from discovery); *Duplan Corp. v.. Deering Milliken, Inc.*, 540 F.2d 1215, 1217 (4th Cir.1976) (opinion work product "immune" from discovery). While it is clear within this circuit that discovery of opinion work product may be accomplished only in "very rare and extraordinary circumstances," *see Allen*, 106 F.3d. at 607, the protection afforded to opinion work product is not absolute, despite language in some of the above cited opinions suggesting that it is.

Here, Plaintiff asserts that insofar as its timeline consists of her attorney's "thoughts and mental impressions" (Paper 60, Ex. A), it is protected as "opinion work product." MHASM contends that the document described by Plaintiff is "primarily factual in nature" (Paper 63, Ex. 1), and thus constitutes "fact work product" that is not necessarily

16

protected. The court need not resolve this issue, however, because even assuming that the document consists entirely of "fact work product," MHASM has made no "showing of substantial need and inability, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Nutramax Labs. Inc.*, 183 F.R.D. at 462. Rather, MHASM appears to claim that simply because the document was reviewed by Plaintiff in preparing for her deposition, it is discoverable. This is a gross oversimplification of the relevant considerations, however. In *Nutramax Labs*, the court identified "three foundational elements" that must be met before Fed.R.Evid. 612, which mandates production of a writing used to "refresh memory for the purpose of testifying," may apply with respect to documents reviewed by a witness to prepare for a deposition: "(1) a witness must use a writing to refresh his or her memory; (2) for the purpose of testifying; and (3) the court must determine that, in the interest of justice, the adverse party is entitled to see the writing." *Id*. at 468 (citing Fed.R.Evid. 612; *Sporck v. Peil*, 759 F.2d 312, 317 (3rd Cir. 1985)).

In the instant case, Plaintiff concedes the first two factors, *i.e.*, that the timeline was used to refresh her memory for purposes of her deposition testimony, but argues that MHASM has made no showing that the interest of justice would be served

by requiring production of the document. Specifically, Plaintiff contends, "[t]he events noted in the timeline are drawn from documents that are already in the possession of MHASM[,] and [Plaintiff], by counsel, has identified which documents they are, and has further offered to supplement MHASM's records with any document it is lacking." (Paper 60 at 5). MHASM's reply papers fail to address this contention; rather, it merely reasserts that if the document consists of fact work product, it is "subject to waiver" and "should be produced . . . immediately," and if it consists of "the *pure* expressions of legal theory, opinions, and/or mental impressions of counsel," it "should be reviewed *in camera*." (Paper 63 at 7 (emphasis in original)).

Absent any demonstration by MHASM as to its "substantial need" for the document in question, the court is without a basis to conduct the balancing test necessary to determine whether the interest of justice requires its production. Plaintiff represents that the timeline refers to documents related to the instant litigation that MHASM either already has in its possession or that have been made available to it; thus, it seems doubtful that MHASM could make the requisite showing. Regardless, even if the document consists solely of "fact work

18

product," MHASM has failed to establish entitlement to it and its motion to compel its production will be denied.

                                                           _____/s/_____
                                                           DEBORAH K. CHASANOW
                                                           United States District Judge